IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| ROBERT LUKES and SHANNON LUKES, | ) ) ) | CV 12-47-M-DLC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| MID-CONTINENT CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

Before the Court are the parties' cross-motions for partial summary

judgment on the issue of whether Defendant Mid-Continent Casualty Company

("Mid-Continent") breached its duty to defend insured Bernie Rubio.  For the

reasons discussed below, the Amended Complaint in the underlying action ("the Amended Complaint") alleged facts that could potentially fall within the scope of the coverage that Mid-Continent provided.  Thus, partial summary judgment is granted in favor of Plaintiffs Robert and Shannon Lukes ("the Lukes"); Mid-Continent had a duty to defend Rubio in the underlying action.

## I.

According to the Amended Complaint, Rubio was hired by the Lukes in May 2006 to design and serve as the general contractor for the construction of a family residence in Missoula, Montana.  (Doc. 18.)  In turn, Rubio hired subcontractors to install the siding of the house and complete the roofing.  The house was completed and the Lukes took possession on or about July 3, 2007.

At some point, the Lukes noticed that the siding "began shrinking, gapping, warping, sagging, cracking, and pulling away from the House at numerous locations."  (Doc. 18 at 3.)  They filed an action in state court against Rubio, the subcontractors, and the siding manufacturer.  In their Amended Complaint, they alleged that "moisture has entered, or will enter, into The House, causing damage to the finish and structure of the building."  (*Id.*)  They also alleged that the problems with the siding detracted from the aesthetic and monetary value of the residence.  Finally, they alleged that certain walls were separating, "with the

drywall pulling away from the ceiling/wall" and that water was leaking into the interior of the house, damaging the walls, ceiling, and wooden floor.  (*Id.* at 4.)

Rubio presented the Complaint and Amended Complaint to his insurer, Mid-Continent, for coverage.  After reviewing the allegations, Mid-Continent declined to defend Rubio, explaining that various provisions of the policy agreement precluded coverage.

Subsequently, the Lukes entered a judgment against Rubio, and Rubio assigned his first-party insurance rights to the Lukes, resulting in the present action.

## II.

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The "duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract."  *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004) (citations omitted).  The duty to defend arises when a complaint alleges facts that, if proven, would result in coverage

under the terms of the policy.  *Id.*  Thus, the Court must look to the provisions of

the policy and to the facts alleged in the underlying complaint.  *Id.* at 385.

Interpretation of the policy is a question of law for the Court to decide.  *Moodroo*

*v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008).  Coverage

exclusions must be narrowly construed, *Farmers Union Mut. Ins. Co.*, 90 P.3d at

385, and ambiguities interpreted against the insurer and in favor of extending

coverage, *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042 (Mont. 2008).

The Court must also construe the facts alleged in the complaint in favor of finding

a duty to defend.  *Farmers Union Mut. Ins. Co.*, 90 P.3d at 385.   "Unless there

exists an unequivocal demonstration that the claim against the insured does not

fall within the policy coverage, the insurer has a duty to defend."  *Id.* at 386.

### III.

### A.

The Lukes do not contest that the insurance policies at issue provide no

coverage for claims for 1) breach of contract, 2) property damage incurred as a

result of Rubio's failure to properly supervise his contractors, or 3) emotional

distress.  The conclusion that none of these claims gives rise to a duty to defend is

supported by the policy language and case law.  First, Exclusion b states:

This insurance does not apply to . . . .

### b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

(Doc. 22-5 at 9.)  The Lukes have made no argument that the exceptions to the exclusion apply here, and on its face, the exclusion unequivocally excludes coverage for a breach of contract claim.

Similarly, Endorsement CG 22 34 07 98 excludes coverage for  "'property damage' . . . arising out of . . . [i]nspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager."  Thus, Rubio's supervision of his subcontractors does not on its own give rise to a duty to defend.

Finally, although the policy language does not explicitly exclude coverage for emotional distress, the policies only apply to claims for "bodily injury" or "property damage."  Under Montana law, a bare allegation of emotional distress does not give rise to a covered claim for "bodily injury."  *Allstate Ins. Co. v. Wagner–Ellsworth*, 188 P.3d 1042, 1051 (Mont. 2008).  There are no allegations in the Amended Complaint to suggest that the Lukes' emotional distress manifested physically.  Accordingly, their claim for relief for emotional distress does not trigger the duty to defend.

Though these claims do not appear to trigger the duty to defend, an insurer

must defend all the claims alleged if even one claim gives rise to the duty to

defend.  *Thomas v. Nautilus Ins. Co.*, CV 11-40-M-DWM-JCL, 2011 WL 4369519

(D. Mont. 2011), *report and recommendation adopted,* CV 11-40-M-DWM-JCL,

2011 WL 4369496 (D. Mont. 2011) (citing *Home Ins. Co. v. Pinski Bros., Inc.*,

500 P.2d 945, 949–50 (Mont. 1972)).

## B.

The Lukes claim that Mid-Continent's refusal to defend Rubio was

wrongful because conflicting policy terms rendered the policy ambiguous and

factual issues precluded the denial.  Three provisions of Rubio's policies are at

issue: Exclusions j(5) and (6) and Endorsement CG 22 94 01.

## 1.  Exclusions j(5) and j(6)

Exclusions j(5) and j(6), which are found in each of Rubio's policies, state:

This insurance does not apply to: . . . .

**j.  "Property damage" to:** . . . .
(5) That particular part of real property on which you or any contractors
or subcontractors working directly or indirectly on your behalf are
performing operations, if the "property damage" arises out of those
operations;" or
(6) That particular part of any property that must be restored, repaired, or
replaced because "your work" was incorrectly performed on it.

(E.g. doc. 22-5 at 9.)  "Your work" is defined in relevant part as "[w]ork or

operations performed by you or on your behalf."  (E.g. doc. 22-5 at 8.)

### a.

United State Magistrate Judge Jeremiah C. Lynch, whose findings were

adopted by Judge Donald W. Molloy, recently found these policy exclusions to be

ambiguous and therefore concluded that they do not exclude coverage for damage

to property other than "that particular part of . . . property" upon which the

allegedly faulty work was performed.  *Roaring Lion, LLC v. Nautilus Ins. Co.*,

CV-11-2-M-DWM-JCL, 2011 WL 3956132 (D. Mont. July 15, 2011).  As in this

case, the insured in *Roaring Lion* had contracted to build a private residence and

hired subcontractors to perform some of the work.  *Id.* at *1.  On summary

judgment, the plaintiff—standing in the shoes of the insured—alleged that the

faulty work of subcontractors on the residence's foundation resulted in damage to

the framing, which had been properly constructed.  Thus, the plaintiff argued,

Exclusions j(5) and j(6) did not exclude coverage for the framing, but only

excluded coverage for damage to the foundation—the "particular part" of the

residence upon which the faulty work was performed.  The insurer, on the other

hand, urged the court to find that Exclusions j(5) and j(6) unambiguously excluded

coverage for damage to any part of the cabin, because all of the cabin was the

work of the insured.

Judge Lynch noted that the insurer's interpretation "overlooks the exclusions' opening reference to 'that particular part' of the real property," *id.* at *5, and he concluded that the ambiguity in the language must be construed in favor of coverage.  Other courts have also found that "the 'particular part' of the property must have been the subject of incorrectly performed work" to be subject to Exclusions j(5) and j(6).  *Mid-Continent Cas. Co. v. JHP Development, Inc.*, 557 F.3d 207 (5th Cir. 2009) (construing Texas law); *Fortney & Weygandt, Inc. v. Am. Manufacturers Mutual Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (construing Ohio law).

These cases are persuasive.  To the extent that Exclusions j(5) and j(6) otherwise apply, they only bar coverage for property damage to the particular part of the property on which the defective work was performed.

**b.**

Mid-Continent argues that Exclusions j(5) and j(6) are not applicable here because the Lukes' home was completed in July 2007.

Exclusion j(5) excludes coverage for property damage to "that particular part of real property on which you . . . are performing operations."  Rubio is no longer performing operations on any part of the Lukes' home, so Exclusion j(5) does not apply.

It is less clear whether Exclusion j(6) applies.  The policies state that

"Paragraph (6) of this exclusion does not apply to 'property damage' included in

the 'products-completed operations hazard.'"  (*Id.*)

"Products-completed operations hazard"

> a. Includes all "bodily injury" and "property damage"
> occurring away from premises you own or rent and
> arising out of "your product" or "your work" except:
>> (1) Products that are still in your physical
>> possession; or
>> (2) Work that has not yet been completed or abandoned.
>> However, "your work" will be deemed completed at the
>> earliest of the following times:
>>> (a) When all of the work called for in your
>>> contract has been completed.
>>> (b) When all of the work to be done at the job site
>>> has been completed if your contract calls for work
>>> at more than one job site.
>>> (c) When that part of the work done at a job site
>>> has been put to its intended use by any person or
>>> organization other than another contractor or
>>> subcontractor working on the same project.
>> Work that may need service, maintenance, correction,
>> repair or replacement, but which is otherwise complete,
>> will be treated as completed.

(E.g. doc. 22-5 at 7.)

Mid-Continent emphasizes that Rubio completed work and the Lukes

moved into their house in July 2007.  Thus, Mid-Continent insists, any property

damage to the house arising from work performed by or on behalf of Rubio is

included within the products-completed operations hazard and is specifically excepted from the scope of Exclusion j(6).  The Lukes counter that this conclusion requires one to assume that the damage to their home only occurred after Rubio's work on their home was completed.  They note that the Complaint leaves open the possibility that damage may have occurred while the work was still underway.  For example, the Complaint alleges that there was "no flashing installed in a certain area where the wall meets the roof," resulting in "water damage to the walls, ceiling, and wooden floor of The House."  Water may have started to enter the house before work was complete.

The plain language of the products-completed operations hazard demonstrates that it refers to damage to the work of the insured that occurred after the insured's work was complete.  See also *Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 649-50 (9th Cir. 1988) ("A completed operations hazard provision insures a general contractor against certain risks that occur after a construction project is finished and is in the owner's control."); *Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1300 (W.D. Wash. 2010) *aff'd sub nom.*, 445 Fed. Appx. 938 (9th Cir. 2011) (unpublished) ("This exclusion for products-completed operations hazards bars coverage for any property damage or bodily injury that may have occurred after Adair Homes

completed its work in constructing the Pearson home.").  Damage that occurred

while the work was still ongoing, however, is not included in the products-

completed operations hazard and therefore may fall within the ambit of Exclusion

j(6).  *MidMountain Contractors Inc. v. Am. Safety Indem. Co.*, — F.Supp. 2d — ,

C10-1239JLR, 2012 WL 3864901 (W.D. Wash. Sept. 5, 2012) (citing

*MidContinent Cas. Co. v. Tital Constr. Corp.*, No. 05–CV–1240 MJP, 2009 WL

1587215, at *3 (W.D. Wash. Jun. 5, 2009), *aff'd* 440 Fed. Appx. 547 (9th Cir.

2011) ("If the damage at issue occurred while [the insured's] work was still

ongoing, then the PCOH does not apply, [then] Exclusion 2(j)(6) does apply. . .

."));  *Aecon Bldgs. v. Zurich N.A.*, 572 F.Supp.2d 1227, 1237 (W.D. Wash. 2008).

     "When a court compares allegations of liability advanced in a complaint

with policy language to determine whether the insurer's obligation to defend was

'triggered,' a court must liberally construe allegations in a complaint so that all

doubts about the meaning of the allegations are resolved in favor of finding that

the obligation to defend was activated."  *Farmers Union Mut. Ins. Co.*, 90 P.3d at

385 (citations omitted).  Here, the Amended Complaint does not unequivocally

state that the damage to the Lukes' home only occurred after work was completed.

Some of the damage may have occurred before the house was completed.  Thus,

some part of the Lukes' claims may not be included in the products-completed

operations hazard.

**c.**

As discussed above, Exclusion j(6) must be read to exclude coverage only
for damage to that "particular part" of the building on which faulty work was
done.  Some damage may have occurred to other parts of the building besides the
roof or siding (e.g. the walls, ceiling, and wooden floor), and some of this damage
may have occurred before the house was completed.  Such damage would not be
excluded from coverage under Exclusion j(6).  Construing the Amended
Complaint and Exclusion j(6) in favor of finding a duty to defend, the alleged facts
"potentially fall within the scope of coverage."  *Skinner v. Allstate Ins. Co.*, 127
P.3d 359, 363 (Mont. 2005).  The Amended Complaint did not unequivocally
demonstrate that none of the Lukes' claims fell within the insurance policies'
coverage, thereby triggering Mid-Continent's duty to defend Rubio in the
underlying action.

**2.  Endorsement CG 22 94 01**

Endorsement CG 22 94 01 reads:

**EXCLUSION - DAMAGE TO WORK PERFORMED BY
SUBCONTRACTORS ON YOUR BEHALF**

This endorsement modifies insurance provided under the following:

-12-

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion I . . . is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**I. Damage To Your Work**
"Property damage" to "your work" arising out of it or any part
of it and included in the "products-completed operations
hazard."

(E.g. doc. 22-8.)

The Lukes maintain that there is a fatal ambiguity between Exclusion j(6)

and Endorsement CG 22 94 01.  They interpret the provision stating that

Exclusion j(6) "does not apply to 'property damage' included in the 'products-

completed operations hazard,'" to mean that property damage included in the

products-completed operations hazard is covered by the Policy.  They therefore

insist that Endorsement CG 22 94 01, which excludes coverage for certain

property damage included in the products-completed operations hazard, directly

contradicts that provision.

In interpreting the exception to Exclusion j(6), the Court is not at liberty to

add words that were omitted from the policy.  The exception merely states that

Exclusion j(6) does not apply to property damage included in the products-

completed operations hazard.  It does not say that property damage included in the products-completed operations hazard is therefore covered by the Policy. Exclusion j(6) does not apply to such property damage, but some other exclusion well might, and Endorsement CG 22 94 01 does.

The Lukes also argue that Endorsement CG 22 94 01 does not apply to "resultant property damage."  They attempt to expand the holding of *Roaring Lion* beyond the scope of the exclusion that court was addressing, Exclusion j(6).  The comparison is inapposite.  The Endorsement does not include the limiting language of Exclusion j(6)—that only damage to that "particular part" of the building upon which the faulty work was performed is excluded from coverage. Rather, the Endorsement broadly excludes coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it. . . ."  Given that "your work" is defined in relevant part as "[w]ork or operations performed by you or on your behalf," the Lukes' entire residence constitutes Rubio's work.   Endorsement CG 22 94 01 precludes coverage for any damage to the house that arose from Rubio's or his subcontractors' work and that occurred after work was completed in July 2007.  This is in keeping with the general purpose of liability insurance:

> A completed operations hazard provision insures a general contractor against certain risks that occur after a construction project is finished and is in the owner's control.  However, exclusions to such a provision

typically preclude coverage for damage resulting to a contractor's own
work. The idea behind this exclusion is that liability insurance should
not be a warranty or performance bond for general contractors, because
they control their work. The exclusion is thought to discourage careless
work by making general contractors pay for losses caused by their own
defective work.

*Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 650 (9th Cir.

1988) (citations omitted). In sum, any claim that faulty work by Rubio or his

subcontractors caused property damage after the house was complete is

unequivocally barred by Exclusion l in Endorsement CG 22 94 01, and it does not

on its own give rise to a duty to defend.

## IV.

As discussed above, many of the Lukes' claims are unequivocally barred by

the language of Rubio's insurance policies. However, construed in the light most

favorable to finding a duty to defend, the Amended Complaint alleges sufficient

facts to trigger that obligation. Some property damage to parts of the house other

than the "particular part" on which faulty work was performed may have occurred

before the house was complete. Such damage would not be excluded from

coverage under Exclusion j(6) or Endorsement CG 22 94 01. "[W]here the alleged

facts even potentially fall within the scope of coverage," the duty to defend is

triggered, *Skinner*, 127 P.3d at 363, and having the duty to defend even one claim,

-15-

Mid-Continent had the duty to defend against all the claims raised.

Accordingly, IT IS ORDERED:

1.  Defendant Mid-Continent Casualty Company's motion for partial summary judgment (doc. 16) is DENIED.

2.  Plaintiffs' cross-motion for partial summary judgment (doc. 23) is GRANTED.  As a matter of law, Plaintiffs are entitled to summary judgment as to Mid-Continent's duty to defend Rubio in the underlying action.

Dated this 11th day of February 2013.

Dana L. Christensen, District Judge
United States District Court